SUPERIOR REALTY AND BUILDING COMPANY *v.* FIRST NATIONAL BANK OF CHICAGO ET AL.

[No. 17,278. Opinion on Motion to Dismiss Filed October 10, 1944. Opinion on Merits Filed March 13, 1945. Rehearing denied April 12, 1945. Transfer denied May 21, 1945.]

640

*George Cohan,* of Gary, and *Jay E. Darlington* and *Crumpacker & Friederick,* of Hammond, for appellant.

*Riley, Reed, Murphy & McAtee,* of East Chicago, and *Kenneth Call,* of Gary, for appellees.

### OPINION ON MOTION TO DISMISS

CRUMPACKER, J.—The appellant instituted this suit by a complaint in three paragraphs and the appellees here were the defendants below. The first paragraph of the complaint seeks an adjudication of the interests of the appellees in certain real estate and asks that the same be declared a mere lien thereon for the payment of money, that the amount thereof be fixed and the appellant allowed to redeem the said real estate by the discharge of such lien. The second paragraph of complaint seeks to quiet the appellant's title to said real estate, and the third paragraph charges the appellees with the unlawful conversion of the real estate involved and asks

damages therefor. The appellee, The First National Bank of Chicago, is not a resident of Indiana, and notice of the pendency of the suit was given it by publication as provided by statute. Said appellee appeared specially and filed a plea in abatement to the third paragraph of complaint on the theory that it is an action *in persona* and seeks a personal judgment against the resident of the State of Illinois under whom the court has acquired no jurisdiction for such purpose. Issues were joined on said plea, a trial was had and the court found for the appellee, The First National Bank of Chicago, and rendered judgment that the appellant's cause of action, as pleaded in the third paragraph of its complaint, be abated as to said appellee. A new trial was denied and the appellant appealed. The original cause is still pending in the Porter Circuit Court and is undisposed of as to all issues joined on the first and second paragraphs of complaint and as to all issues joined on the third paragraph of complaint except as to said plea in abatement. The appellee, The First National Bank of Chicago, now asks us to dismiss this appeal on the grounds that there is no final judgment from which an appeal can be taken and that it is an effort on the part of the appellant to appeal its case in installments in that the order appealed from is and can be but a part of an eventual final judgment.

We recognize it to be the general rule that "a final judgment is one that at once disposes of all the issues, as to all the parties, involved in the controversy presented by the pleadings, to the full extent of the power of the court to dispose of the same, and puts an end to the particular case as to all of such parties and all such issues." *Neyens* v. *Flescher* (1907), 39 Ind. App. 399, 79 N. E. 1087. This rule, however, does not "preclude an appeal from a judgment or decree

which judicially determines all of the issues presented by a collateral or auxiliary proceeding and leaves nothing to be done therein except the ministerial act of executing such judgment or decree as rendered." *Frankfort Construction Co.* v. *Sims* (1916), 185 Ind. 71, 73, 113 N. E. 298; *Hamrick, Trustee* v. *Loring* (1897), 147 Ind. 229, 231, 45 N. E. 107. The trial of the issues joined on a plea in abatement is collateral to the main proceedings. Separate and distinct issues of fact are tried and determined independently of the cause of action set out in the complaint and which cannot proceed to determination until the plea in abatement has been disposed of.

The appellees' second contention is fully answered by Rule 2-3, 1943 Revision, which provides in part as follows: "No appeal will be dismissed as of right ■ because the case was not finally disposed of in the court below as to all issues and parties, but upon suggestion or discovery of such a situation the appellate tribunal may, in its discretion, suspend consideration until disposition is made of such issues, or it may pass upon such adjudicated issues as are severable, without prejudice to parties who may be aggrieved by subsequent proceedings in the court below."

This rule vests discretion in this court to do two things: (1) Suspend consideration of this appeal until the other issues are disposed of, or (2) pass upon the adjudicated issues presented by this appeal. The second alternative seems the more logical in the present case and best calculated to simplify the proceedings on the issues in the main case.

It has not been our custom nor are we required to file written opinions on motions to dismiss appeals where the same are overruled. We do so in this instance only because the motion herein involves the construction

of the Rules on a question that heretofore has had no expressed judicial interpretation.

The motion to dismiss is overruled.

NOTE.—Reported in 56 N. E. (2d) 855.


OPINION ON MERITS.

FLANAGAN, J.—The original complaint filed by appellant in this case was in one paragraph. Service was by publication. Appellee, The First National Bank of Chicago, appeared specially and filed a plea in abatement. Thereafter appellant filed an amended complaint in two paragraphs which is not here involved and need not be further noticed. Later appellant filed a third paragraph of complaint. No new service was attempted. Appellee, The First National Bank of Chicago, appeared specially and filed a plea in abatement to this paragraph. Hearing was had on this last plea in abatement, with resultant judgment that the action based upon the third paragraph of complaint abate. From that judgment this appeal is prosecuted. Hereafter, when the appellee is mentioned reference will be to appellee, The First National Bank of Chicago.

The sole questions here presented are: (1) Did appellee's plea in abatement of the original complaint constitute a general appearance? (2) If it did was appellee thereby deprived of the right to question the jurisdiction of its person as to the third paragraph of complaint? In view of our conclusion as to the first question it will not be necessary for us to consider the second.

The original complaint, omitting the formal parts, reads as follows:

"Plaintiff is an Indiana corporation, organized and existing according to law. On and prior to September 14th, 1931, plaintiff was the owner of

that certain judgment and decree of Lake Superior Court, Room 4, in Cause No. 22,320, thereof, foreclosing a certain mortgage theretofore owned by plaintiff upon the following described real estate, to-wit: (Description of property.)

"On said date, September 14th, 1931, pursuant to said decree, the sheriff of Lake County, Indiana, sold said real estate at sheriff's sale to satisfy said judgment and decree. Plaintiff appeared at said sale and purchased said property and paid therefor by crediting the purchase price upon the amount due plaintiff in said judgment and decree. However, the sheriff's certificate of sale thereon was not issued in the name of plaintiff, but was issued to defendant, Foreman-State National Bank, by virtue of an agreement between plaintiff and said bank, the terms of which were as follows:

"Plaintiff was at that time indebted to said Foreman-State National Bank in the principal sum of $4,500.00 upon its promissory note. Plaintiff on or about the date of said sale agreed with said Bank that said real estate would be purchased at said sale in the name of said bank and said sheriff's certificate would be issued in the name of said bank, for the purpose of securing the aforesaid indebtedness of plaintiff to the bank; and that when said indebtedness had been paid, said bank's interest and title to said real estate, which it had acquired by virtue of said sale, would be reconveyed by the bank to plaintiff.

"The year of redemption from said sale expired September 14th, 1932, and no redemption was made. Thereupon, said bank continued to hold said certificate and whatever title to said real estate it had acquired therefrom, as security for the aforesaid indebtedness, down to October 27, 1936, on which date said bank purported to foreclose upon said security by holding an alleged collateral sale in Chicago, Illinois, at which it caused its agent and officer, defendant Harry Krauspe, to bid in said certificate for the sum of $3,000.00, which it purported to credit upon the aforesaid note of plaintiff to the bank. Thereafter, on November 2, 1936, said Krauspe, at the direction of and for the benefit of said bank, converted said certificate into a

sheriff's deed by surrendering it to the sheriff of Lake County, Indiana, as assignee thereof, and having a sheriff's deed to said property issued to himself thereon.

"In June, 1931, defendant, First National Bank of Chicago, entered into an arrangement with said Foreman-State National Bank whereby said First National Bank assumed the deposit liabilities of the Foreman-State National Bank and took charge of the assets thereof, including the aforesaid note of Plaintiff to the Foreman-State National Bank, and thereafter the First National Bank by its officers participated in all the above described acts of Foreman-State National Bank, including the mak ing of said agreement on or about September 14th, 1931, and the subsequent holding of said security, the subsequent purported collateral sale thereof as aforesaid, and the subsequent taking of said deed in the name of Harry Krauspe. All of the aforesaid acts charged against Foreman-State National Bank are hereby charged also as the acts of said First National Bank, but whether said First National Bank was acting in those transactions on its own behalf or as the liquidating agent of Foreman-State National Bank is unknown to plaintiff at the present time and is known to said defendants.

"After said purported collateral sale, said defendant banks and defendant Krauspe undertook to hold and deal with said real estate in the capacity of full owners thereof as against plaintiff, and said banks caused said Krauspe to convey same by quitclaim deed to defendant Horace M. Capron, who now holds the record title to said property by virtue of said conveyance.

"Plaintiff asserts that by virtue of the foregoing facts the defendant banks became vested with the equitable title to said real estate when the year of redemption expired on September 14th, 1932, as equitable mortgagees thereof to secure plaintiff's said debt, and they continued to hold said title thereafter as such mortgagees; that said purported collateral sale was void, for the reason that a mortgage upon Indiana real estate cannot be foreclosed

in such manner; that plaintiff is the equitable owner of said real estate and is entitled to redeem from said mortgage as against defendants and each of them; and if the court is unable for any reason to grant said relief, plaintiff claims the right to have whatever relief the court is able to administer at law or equity to redress the wrongs aforesaid.

"WHEREFORE, plaintiff prays a decree permitting it to redeem said property from the equitable mortgage aforesaid and fixing the terms of redemption; and further prays all other proper relief in the premises."

Appellee's plea in abatement to the original complaint, omitting the formal parts, reads as follows:

"Comes now the defendant, The First National Bank of Chicago, a corporation, and appears specially herein for the sole purpose of this Plea in Abatement, and by way of plea in abatement, says:

"1. That on August 24, 1929, The Superior Realty and Building Company, a corporation, was indebted unto The Foreman National Bank, a corporation, upon its certain written collateral promissory note in the sum of $6,000.00; that as collateral security for the payment of said note said The Superior Realty and Building Company did deposit and pledge with said The Foreman National Bank three mortgage notes dated April 6, 1928, executed by William E. Graham for the total aggregate principal amount of $32,000.00, Note No. 1 for $10,668.00, due April 6, 1930; Note No. 2 for $10,666.00, due April 6, 1930; and Note No. 3 for $10,666.00, due April 6, 1932, all secured by a certain mortgage dated April 6, 1928, and recorded April 12, 1928, in Mortgage Record 315, page 323 of the records in the Recorder's Office of Lake County, Indiana, executed by William E. Graham, a bachelor, unto South Side Trust and Savings Bank, as Trustee, which notes and mortgage were pledged unto said bank under and by virtue of the terms of said written collateral promissory note aforesaid.

"2.  That thereafter and during the year of 1930, said mortgage and the debt thereby secured, became in default.

"3.  That on or about September 4, 1930, an action was instituted by South Side Trust and Savings Bank, Trustee, for The Superior Realty and Building Company, an Indiana corporation, in the Lake Superior Court Room 4, sitting at Gary, Indiana, and docketed as Cause No. 22320, to foreclose said mortgage recorded in Mortgage Record 315, page 323 of the records of Lake County, Indiana; that various proceedings were had in said foreclosure action and a decree rendered therein on May 12, 1931, finding that said mortgage was a first and prior lien upon the following described real estate, to-wit:  (Description of property.)

"4.  That thereafter and on September 14, 1931, pursuant to the decree so rendered in said cause of action, said real estate hereinabove described was by the Sheriff of Lake County, Indiana, sold.

"5.  That on September 10, 1931, said The Superior Realty and Building Company requested in writing that said mortgage and said notes be produced and turned over, to-wit, so that the same might be produced at the office of the Sheriff of Lake County, Indiana, at the Sheriff's Sale to be had upon the real estate above described; and in case said The Superior Realty and Building Company should become the successful bidder at said Sheriff's Sale, that the certificate of purchase to be issued by the Sheriff of Lake County, Indiana, describing the real estate above described, be delivered to The First National Bank of Chicago in lieu of said notes and mortgage, then held by it for and on behalf of Foreman-State National Bank, a corporation.

"6.  That on said 14th day of September, 1931, said real estate was sold by said Sheriff of Lake County, Indiana, and said Sheriff did issue, pursuant to said sale, his certificate evidencing said sale; that said Sheriff's Certificate of purchase was issued by Roy F. Holley, Sheriff of Lake County, Indiana, unto Foreman-State National Bank, a corporation, and described the real estate herein-

above described, which Sheriff's Certificate was recorded on October 21, 1931, in Lis Pendens Record 5, page 381 of the records of Lake County, Indiana. That on September 14, 1931, said The First National Bank of Chicago, acting for and on behalf of Foreman-State National Bank, and at the request in writing of said The Superior Realty and Building Company, allowed said notes and mortgage aforesaid to be withdrawn from said bank and sent them by its agent unto Crown Point, Indiana, and said notes and mortgage were produced at the time of said Sheriff's Sale aforesaid, and on the issuance of said Sheriff's Certificate of purchase aforesaid, the same was substituted as collateral in lieu of said notes and mortgage surrendered; that said Sheriff's Certificate aforesaid was delivered to The First National Bank of Chicago for and on behalf of said The Superior Realty and Building Company, a corporation.

"7. Said The First National Bank of Chicago further says that from August 24, 1929, down to and including August 5, 1930, said The Superior Realty and Building Company, a corporation, remained indebted to The Foreman National Bank or Foreman-State National Bank, and that on August 5, 1930, there was due and owing by the said The Superior Realty and Building Company unto said bank the sum of $4,500.00, as evidenced by its certain written collateral promissory note maturing on October 6, 1930; that on said October 6, 1930, said obligation having been unpaid and having matured, said The Superior Realty and Building Company did obtain an extension of time for the payment of said loan and indebtedness, and did upon said date execute and deliver unto said bank its certain written collateral promissory note for $4,500.00; that thereafter said indebtedness did from time to time mature and was from time to time renewed by said The Superior Realty and Building Company, a corporation, by renewing its certain written collateral promissory notes.

"8. That said mortgage and notes of said William E. Graham were at all times from August 24, 1929, deposited with the said banks as collateral security for the re-payment of said loans.

"9. That on January 29, 1932, there was due and owing unto Foreman-State National Bank from said The Superior Realty and Building Company the sum of $4,682.00, which said sum was then matured and due and owing; that on said date, to-wit: January 29, 1932, said The Superior Realty and Building Company, a corporation, did execute its written collateral promissory note maturing March 29, 1932, a true and correct copy of which said note is attached hereto, marked "Exhibit 1" for identification and made a part hereof by reference; that the Sheriff's Certificate of Sale described in said exhibit is one and the same as the Sheriff's Certificate of Sale herein otherwise in this Plea of Abatement alleged and described, and as collateral security for re-payment thereof said Sheriff's Certificate of Sale hereinabove described remained with said Foreman-State National Bank or The First National Bank of Chicago; that said promissory note did mature on March 29, 1932, and did remain unpaid.

"10. Said The First National Bank further says that during the month of September, 1929, The Foreman National Bank did consolidate with State Bank of Chicago under the name of Foreman-State National Bank; that thereafter and on June 8, 1931, said The First National Bank of Chicago did assume the deposit liabilities of said Foreman-State National Bank and said Foreman-State National Bank did thereupon transfer unto said The First National Bank of Chicago all of its assets, including the obligation of The Superior Realty and Building Company, a corporation, pursuant to a written agreement dated June 8, 1931, for liquidation and as security for the payment of said deposit liabilities.

"11. Said The First National Bank further says that various demands, oral and written, were made upon said The Superior Realty and Building Company, a corporation, after their respective maturity dates, for the payment of its obligation unto said bank; that on June 14, 1933, said bank advised said The Superior Realty and Building Company, a corporation, in writing by registered mail, that unless its debt was placed in good standing the bank

would be forced to hold a sale of the collateral; and that on July 25, 1933, notice was published in The Chicago Daily News that a sale would be held on August 4, 1933, in Room "S" of the National Safe Deposit Company, 38 South Dearborn Street, Chicago, Illinois, at 10:00 o'clock A. M., Central Daylight Savings Time, and that on said time and place the aforesaid Sheriff's Certificate would be offered at public auction to the highest bidder for cash; and that on July 24, 1933, Foreman-State National Bank notified said The Superior Realty and Building Company in writing of said sale set for August 4, 1933; that said sale was discontinued at the request of said The Superior Realty and Building Company, a corporation.

"12. That thereafter and on October 20, 1936, The First National Bank of Chicago, acting for and on behalf of Foreman-State National Bank, notified in writing said The Superior Realty and Building Company that said Sheriff's Certificate aforesaid would be offered for sale on October 27, 1936, at 10:00 o'clock A. M., Eastern Standard Time, in the Judicial Sales Room of the Chicago Real Estate Board, 32 West Randolph Street, Chicago, Illinois, to the highest bidder for cash, and that at said sale said bank shall exercise the right conferred upon us in and by the contract of pledge embodied in the note aforesaid of ourselves to bid as freely as third parties may bid at said sale. That notice of the time, terms and place of said sale was given by publication in the Chicago Journal of Commerce on October 21, 1936, and that pursuant to notice given, on October 27, 1936, at said time and place aforesaid said Sheriff's Certificate was offered for sale at public auction, and that said The First National Bank of Chicago did bid therefor at said sale the sum of $3,000.00, and said bid being the highest bid offered and received at said sale said The First National Bank of Chicago became the purchaser thereof and paid said sum, and credit therefor, less expenses of $12.80 was given upon said obligation of said The Superior Realty and Building Company on its note, a copy of which is attached to this Plea in Abatement and marked "Exhibit 1," and thereupon, on the direction of said

The First National Bank of Chicago, said Sheriff's Certificate was by said Foreman-State National Bank duly assigned to Harry Krauspe, to be held by him for said bank.

"13. That thereafter, and on November 2, 1936, said Sheriff's Certificate, as assigned, was delivered to the Sheriff of Lake County, Indiana, and on said date Carroll O. Holley, Sheriff of Lake County, Indiana, issued unto Harry Krauspe a Sheriff's Deed describing the real estate hereinabove described, which Sheriff's Deed was recorded November 6, 1936, in Deed Record 555, page 237 of the records of Lake County, Indiana; and that said Harry Krauspe acted for and on behalf of said The First National Bank of Chicago.

"14. Said The First National Bank of Chicago further says that it did offer said real estate for sale, and sold the same unto the co-defendant, Horace M. Capron, for the sum of $2,500.00 under a written agreement dated August 27, 1937, and on execution of said agreement received the sum of $500.00 by check and on September 2, 1937, the date on which said sale was consummated, received Horace M. Capron's check for the balance due of $2,000.00, and on said date said bank caused said real estate to be conveyed unto said Horace M. Capron by quit-claim deed dated August 28, 1937, and executed by Harry Krauspe and Doxie L. Krauspe, his wife, conveying the real estate above described unto said Horace M. Capron, which deed was recorded on September 3, 1937, in Deed Record 570, page 486 of the records in the Recorder's Office of Lake County, Indiana.

"15. That the unpaid balance of indebtedness upon said collateral promissory note of said The Superior Realty and Building Company, a copy of which is attached hereto, in the principal amount of $1,694.80 is past due and wholly unpaid, together with the interest thereon and has not in any other manner been discharged.

"16. That plaintiff herein filed its cause of action in the Circuit Court of Lake County, Indiana, against this defendant and co-defendants on December 29, 1939.

"17. That plaintiff's cause is prematurely brought for the reason that no demand was made upon this defendant prior to the filing of plaintiff's cause of action herein for the return of the collateral so pledged, nor has any demand been made since said time.

"18. That plaintiff's said cause of action is prematurely brought for the reason that it has made no tender of the payment of its unpaid indebtedness prior to the filing of said cause of action, nor has any tender been brought into court.

"19. This defendant further says that at the time the above entitled action was commenced, and continuously ever since, and at the present time this said defendant was not a resident of the state of Indiana, but at the time of the beginning of said suit, and ever since said time this said defendant has been and still is a resident of the state of Illinois. That this defendant has not now, and never has had any office, agency or place of business in the state of Indiana, and that said suit and cause of action did not grow out of, or was connected with any business or transaction of any office or agency of this defendant in the state of Indiana. That the only service of process herein had upon this defendant was and is by publication. That the court herein has no jurisdiction over the person of this defendant.

"WHEREFORE, the defendant, The First National Bank of Chicago, a corporation, prays that this plea in abatement be sustained; that plaintiff's action be abated, and for all other proper relief."

Appellant contends that the plea in abatement to the original complaint contains matter going to the merits of the case. We cannot agree with this ▆▆ contention. A plea in abatement requires the utmost fullness, certainty and particularity of statement, and the involved plea merely seeks to meet this requirement. Examined in its entirety it clearly is a plea to abate the action and nothing more.

But appellant says that one of the grounds for abatement pleaded is that the action was prematurely brought and that such a plea in abatement constitutes a general appearance. Appellant seeks to classify pleas in abatement and contends that a plea in abatement which challenges the jurisdiction of the court over the person of the defendant is filed upon special appearance and does not constitute a general appearance, but that a plea in abatement based upon the ground of premature action is filed upon general appearance and constitutes a general appearance. We cannot agree with this contention.

In this state all pleas in abatement based upon matters in existence before general appearance must be filed before there is a general appearance and the filing of any such plea in abatement does not constitute a general appearance. See *Boland* v. *Claudel* (1914), 181 Ind. 295, 104 N. E. 577, and *Kokomo St. R. Co.* v. *Pittsburgh, etc., R. Co.* (1900), 25 Ind. App. 335, 58 N. E. 211. The reason is clear. Orderly procedure requires that it be possible to dispose at one time of all matters seeking to abate the action. This could not result if a defendant were required to first present the question as to jurisdiction of his person and then in a later hearing try the question as to whether the action was prematurely brought.

We are of the opinion that the filing of the plea in abatement to the original complaint did not constitute a general appearance.

Judgment affirmed.

NOTE.—Reported in 59 N. E. (2d) 739.